**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 10-256-8 (RMC) |
| | : | |
| **v.** | : | |
| | : | |
| **NOE MACHADO ERAZO,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY AND CELLULAR REPORT OF FBI SPECIAL AGENT DAVID MAGNUSON**

The United States, by its undersigned counsel, hereby opposes defendant Noe Machado Erazo's Motion in Limine to Exclude the Expert Testimony and Cellular Analysis Report and Charts of Special Agent David Magnuson (Doc. 367). Pursuant to the admissibility standards established in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the defendant alleges that SA Magnuson's testimony should be excluded. However, FBI agents have testified as experts in the area of cell site analysis in this very courthouse on two occasions without a Daubert hearing in 2012, in United States v. Weldon Gordon, Cr. No. 09-153 (RMU) and United States v. Mark Pray, Cr. No.10-51 (RMC). Further, Judge Ellen Huvelle rejected a similar challenge to cell site testimony in United States v. Antoine Jones, Cr. No. 05-386 (ESH) (Doc. 675) (Attached as Exhibit A). Finally, Agent Magnuson himself has repeatedly testified as an expert witness including the very case cited by the defendant in this case. See Def's Mtn. Ex. 3 at 110. Accordingly, as demonstrated below, the defendant's last minute motion should be denied.

**FACTUAL BACKGROUND**

SA Magnuson's report in this matter was provided to Court as Government's Exhibit 306. His report and curriculum vitae were provided to the defendants months ago. Importantly, his report and testimony will show that the cell phones used by defendants Machado Erazo, Jose Martinez Amaya, and a cooperating witness were in the remote area where the body of Felipe Enriquez was found on or about March 28, 2010. SA Magnuson's report is based on cell records obtained by subpoena in the investigation of this case.[1]

**ARGUMENT**

Defendant's assertion that the methodology used by SA Magnuson is unreliable is in direct contravention to the record. The government's proffer is that he will be qualified based upon his ability to explain (1) how cellular networks operate, which will be based on his experience and training directly from the cellular service providers, and how the networks themselves need to know the general location (the cell tower and sector being used by the phone) to connect incoming and outgoing calls; (2) how these records and cell tower location lists are data obtained directly from the cellular service providers and how they are used and relied upon in the field of historical cell site analysis by law enforcement; (3) that cell site analysis has proven to be accurate thousands of times by law enforcement around the country and has been accepted by courts as reliable evidence; and (4) because he has been qualified and testified as an expert in the field of historical cell site analysis on numerous occasions in Federal and State courts across the nation. Moreover, as stated above, in United States v. Gordon, Cr. No. 09-153(RMU) and United States v. Pray, Cr. No. 10-51 (RMC),

---

[1] This proposed testimony will not claim to have determined the exact location of the phone user, but rather the general location where a cell phone would have to be located to use a particular cell tower and sector.

another agent was qualified and testified as an expert based on his training and expertise in his field; without the necessity of a Daubert hearing. For these reasons, the defendant has failed to state a cognizable claim under Daubert and his motion should be denied without a hearing.

   a.  Rule 702 and Daubert

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert, the Supreme Court held that the Frye[2] standard had been superceded by the adoption of the Federal Rules of Evidence. 509 U.S. at 587. The High Court noted that Frye's "rigid general acceptance requirement would be at odds with the liberal trust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." Id. at 588 (citation and quotation marks omitted).

In acting as gatekeeper, this Court "must determine first whether the expert's testimony is based on scientific knowledge; and second, whether the testimony will assist the trier of fact to understand or determine a fact in issue. United States v. Law, 528 F.3d 888, at 913 (D.C. Cir. 2008) (quoting Ambrosini v. Labarraque, 101 F.3d 129, 133 (D.C. Cir. 1996) (in turn quoting Daubert, 509 U.S. at 592)).[3] In order to qualify as "scientific knowledge," an inference or assertion must be

---

[2] See Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).

[3] The later requirement -- that the evidence assist the trier of fact to understand a fact in issue -- "goes primarily to relevance." Daubert, 509 U.S. at 591.

3

derived by "scientific method" and supported by "appropriate validation," i.e., "good grounds, based on what is known." Daubert, 509 U.S. at 590. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." Id. As the D.C. Circuit noted in Ambrosini, the Daubert Court outlined four factors that the district court could use to evaluate scientific validity:

> (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the method's known or potential rate of error; and (4) whether the theory or technique finds general acceptance in the relevant scientific community.

The D.C. Circuit emphasized that the inquiry is a flexible one and that the factors outlined by the Supreme Court are not "necessarily applicable in every case or dispositive; nor are they exhaustive." Day, 528 F.3d at 913 (quoting Ambrosini, 101 F.3d at 133). "The focus, of course, must be solely on principles and methodology, not the conclusions that they generate." Daubert, U.S. at 595. Moreover, the Supreme Court expressed a high degree of confidence in the capacity of the adversarial system in general, and jurors in particular, to sort out expert testimony: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Daubert, 509 U.S. at 596. "These conventional devices, rather than wholesale exclusion under an uncompromising 'general acceptance' test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." Id.

   b.  The Analyst's Report Is Based Upon Sufficient Data and a Reliable Methodology

      i. <u>SA Magnuson is qualified and his Report is based upon sufficient data</u>

SA Magnuson is a highly trained Special Agent in the FBI's Cellular Analysis and Survey Team. He has received training from the cellular service providers, worked on hundreds of cases involving thousands of hours of practical experience analyzing historical call detail records and has been qualified approximately twenty times in courts as an expert in the field of cell site analysis. Moreover, he explain that the data relied upon to formulate his opinions are routinely relied upon, not just by law enforcement, but also by the service providers themselves. He will testify to how cellular networks operate and that the networks need to know the general location – specifically the cell tower and sector being used by the phone – to connect the incoming and outgoing calls.

      ii. <u>Cell Site Analysis constitutes a reliable methodology</u>

Testimony about cell phone technology and the ability to determine the general area where calls are placed and received has been admitted in courts throughout the country. This is not surprising since the science behind how cell phones and cell towers work is accepted in the scientific and legal community. In fact, the government has not found a single case in which a court ruled this type of evidence untrustworthy or junk science.[4] <u>See</u> Exhibit A (Judge Huvelle's Opinion) at 6. The courts have repeatedly allowed such testimony. <u>See</u> <u>United States v. Benford</u>, 2010 WL 2346305 (N.D. Ind.); <u>Pullin v. State</u>, 534 S.E.2d 69 (Ga. 2000); <u>State v. Robinson</u>, 724 N.W.2d 35 (Neb.

---

[4] Even <u>United States v. Evans</u>, 892 F. Supp. 2d 449 (N.D. Illinois 2012), cited by the defense, supports the government's position. In that case, the trial court ruled that the FBI Special Agent *could* testify as an expert concerning the operation of cellular networks and granulization theory. The court further agreed that his testimony "concerning maps he created indicating the location of certain cell towers used by Evan's phone during the course of the conspiracy in relation to other locations relevant to the crime" were admissible through lay opinion testimony under Rule 701. What the expert could not do was hypothesize that the defendant's phone could have been in the same building where the kidnap victim was held – a far cry from the testimony in this case.

2006); United States v. Mendoza-Morales, 2007 WL 4388100, *3 (D.Or.) (RF engineer from T-Mobile allowed to testify the cell tower records can show the "general vicinity of a cell phone and recreate the movement of that cell phone.").

Moreover, the courts are in agreement that cell phone technology is well understood and has been for over half a decade.

- In People v. Wells, No. VCR1649678, 2007 WL 466963, at *11 (Cal. Ct. App. 2007), the appellate court stated: "It is simply not true, as defendant contends, that the use of cell phones to locate a caller is new to the law." The court rejected the need for an evidentiary hearing because there was "nothing unusual or foreign in the notion that the cellular telephone system uses towers . . . and almost everyone is presumably aware . . . that making cell calls entails sending and receiving information via cell towers." The court added that "[r]ecipients of cell phone bills will generally appreciate that the company has some idea of where their calls originate, since the bills often list the general location of calls." Id.

- In People v. Davis, No. VCR 158881, 2006 WL 2965368, at *7 (Cal. Ct. App. 2006), the appellate court upheld the trial court's refusal to conduct an evidentiary hearing because cell phone technology "is just a field of science that we all know about." The court held that historical cell site data evidence has been introduced in myriad cases to identify a caller's location, without any concern for the validity of the underlying science. Id. at *9

Because cell phone technology is neither novel nor particularly complex, courts have consistently rejected the argument that a peer-reviewed article is required to satisfy Daubert. In Daubert, the Court itself emphasized that, while the existence of peer-reviewed publication is a

factor to be considered, "in some instances well-grounded but innovative theories will not have been published." Id. at 593.

- In <u>United States v. Benford</u>, No. 2:09 CR 86, 2010 WL 2346305, at *3 (N.D. Ind. June 8, 2010), the district court held that the lack of a peer-reviewed article did not indicate that the government expert's testimony was unreliable. Instead, it admitted expert testimony despite the lack of a peer-reviewed article buttressing the expert's methodology, because it found that the methodology was probative of the defendant's guilt.

- The district court in <u>United States v. Allums</u>, No. 2:08-CR-30 TS, 2009 WL 806748, at *2 (D. Utah March 24, 2009) held that while the expert witness was not able to identify any peer-reviewed article involving historical cell site data, the "success achieved" by the expert witness "and others in catching fugitives while using this methodology is sufficient to establish the methodology's reliability."

Numerous courts have ruled that historical cell site data is admissible because the underlying methodology is sound and can reliably indicate the general location of the cell phone user.

- In <u>United States v. Allums</u>, No. 2:08-CR-30 TS, 2009 WL 922185, at *1-2 (D. Utah Mar. 24, 2009), the court admitted expert testimony on historical cell site data based on its finding that historical cell site data reliably tracked the general location of the defendant. In addition to the reasons cited above, the court found that the testimony was reliable because the government, as it has done in the instant matter, reconstructed the defendant's use of the phone by 1) purchasing a cell phone from the same service provider as that used by the defendant; 2) placing the phone in "engineering mode"; 3) driving systematically around the

area with the phone; and 4) tracking which cell tower the cell phone connected to at any geographical position.

- In <u>United States v. Morley</u>, 353 Fed. Appx. 256, 263-64 (11th Cir. 2009), the Court of Appeals upheld the district court's admission of expert testimony regarding historical cell site records to track the defendants' location and affirmed the defendants' conviction.

- In <u>United States v. Mendoza Morales</u>, No. 05-98-01-RE, 2007 WL 4388100, at *3 (D.Or. Dec. 12, 2007), the district court admitted testimony regarding historical cell site analysis because the government expert's testimony "more than met any <u>Daubert</u> concerns."

- In <u>Pullin v. State</u>, 534 S.E.2d 69, 71 (Ga. 2000), the Georgia Supreme Court analyzed historical cell site data and held that it has been an "integral" part of many investigations. The historical cell site data were admissible because they were "accurate" and had "never been found to be incorrect."

- In <u>People v. Martin</u>, 98 Cal. Ct. App. 4th 408 (Cal. Ct. App.), the appellate court upheld the admission of historical cell site data as evidence of the defendant's movement to and from the murder scene.

- In <u>United States v. Wasielak</u>, 139 Fed. Appx. 187 (11th Cir. 2005), the Court of Appeals upheld the district court's admission of historical cell site data because the phone records indicated that the defendant had made calls near the cite of the alleged crime.

- In <u>State v. Tran</u>, 712 N.W.2d 540 (Minn. 2006), the Minnesota Supreme Court upheld the admission of historical cell site analysis to show that the defendant's *alibi* was false and that he was actually in the general vicinity of a murder at the time of the murder.

      iii. <u>The methodology was applied reliably to the facts of this case</u>

Cell site and sector analysis does not determine the exact location of a cell phone, but rather shows the general area the phone had to be located based on the cell tower location and the sector of the tower used to transmit the call. SA Magnuson's report will help show that phones used by the defendants were in the vicinity of where Mr. Enriquez's body was found. Surely, the jury is entitled to hear his relevant and probative testimony.

  c. <u>No Hearing Is Necessary To Resolve Defendant's Daubert Motion</u>

The defendant's claim does not establish a basis to exclude the cell site/tower testimony under <u>Daubert</u>. First, the methodology used by the expert (the general location of the cell phone based on analyzing the usage of cell towers and sectors), has been accepted as reliable by numerous cases across the country (including this Court) and has been tested through numerous cases investigated by law enforcement. The Court has before it SA Magnuson's report demonstrating that it is based upon sufficient data and is the product of a reliable methodology. As such, there is no need for the Court to conduct a full <u>Daubert</u> hearing.

WHEREFORE, the defendant's motion should be summarily denied.

                                          Respectfully submitted,

                                          RONALD C. MACHEN Jr.
                                          UNITED STATES ATTORNEY

BY:      _____/S/_____
            NIHAR MOHANTY
            Assistant United States Attorney
            555 Fourth Street N.W.
            Washington, D.C. 20530
            (202) 353-9178

            _____/S/_____
            LAURA GWINN
            Trial Attorney, Department of Justice
            1301 New York Avenue, N.W.
            Washington, D.C. 20530
            (202) 353-9178