# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 10-256-08, -09,** |
| | ) | **-20 (RMC)** |
| **NOE MACHADO-ERAZO,** | ) | |
| **JOSE MARTINEZ-AMAYA,** *and* | ) | |
| **YESTER AYALA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____

## OPINION

Jury selection for this criminal trial was conducted on June 14, 2013, from a venire of 70 potential jurors. Defendants Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala are charged with crimes associated with their alleged membership in the gang MS-13. MS-13 originated in Los Angeles but has roots and leadership in El Salvador.[1] All three Defendants are Hispanic. At the end of jury selection, all three Defendants complained that the make-up of the venire violated their rights because there was not a single Hispanic person among the 70 persons questioned as potential jurors. Defendants filed a Memorandum of Law Challenging the Constitutionality of Jury Selection, Dkt. 373, on June 17, 2013, in which they identify three potential jurors with Hispanic surnames (three of 70, or 4.3% of the venire) from a

---

[1] Additional background on MS-13 is set forth in the Court's prior Opinion regarding co-Defendant Yester Ayala. *See United States v. Y.A.*, __ F. Supp. 2d __, Cr. No. 11-36 (RMC), 2013 WL 2138907, at *2–3 (D.D.C. Feb. 11, 2013); *see also United States v. Machado-Erazo*, __ F. Supp. 2d __, Cr. No. 10-256-08 (RMC), 2013 WL 2932399 (D.D.C. June 17, 2013) (denying Defendant Machado-Erazo's *Daubert* motion).

Washington, D.C. population that, Defendants assert, is "9.5%" persons of "Hispanic or Latino Origin" as of 2011.[2]

Defendants complain that the venire was unfair, Defs. Mem. at 1–2; that the government improperly struck one of the few persons with an Hispanic surname, *id.* at 2–3; and that the Court erred in notifying them of a clerical error and asking for identification of an additional alternate from among those properly on the jury, *id.* at 3–4.

The motion will be denied in all respects.  It is without merit, contrary to the law, and without any basis in fact.

## I.  NATURE OF THE VENIRE

*Taylor v. Louisiana*, 419 U.S. 522 (1975), first held that "the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community." *Id.* at 537; *see also Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Although "[d]efendants are not entitled to a jury of any particular composition . . . the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Taylor*, 419 U.S. at 538.  The Jury Selection and Service Act (JSSA) codifies this right, stating that federal litigants entitled to a jury trial have "the right to grand and petit juries selected at random from a fair cross section of the community in the district or division where the court convenes." 28 U.S.C. § 1861.

---

[2] Although Defendants provide no authority for this proposition beyond stating that it was "[a]ccording to the U.S. Cencus [sic] Bureau," Def. Mot. at 2, the Court has confirmed that the Census Bureau's website lists the same 9.5% Hispanic/Latino figure for 2011.  *See* U.S. Census Bureau, District of Columbia QuickFacts (last revised June 6, 2013), accessible at http://quickfacts.census.gov/qfd/states/11000.html (last accessed June 17, 2013; copy available in Court's file).

Defendants complain that there was an unconstitutional absence of sufficient persons of Hispanic origins in the entire venire and therefore it did not represent a fair cross section of Washington, D.C.  *See* Defs. Mem. at 1–2.  *Duren v. Missouri*, 439 U.S. 357 (1979), established a multi-factor test for determining whether a venire fails to offer a "fair cross section" as the JSSA requires:

> [T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364.  There is no doubt that Hispanics form a distinctive group in this community, but Defendants offer no basis from which to conclude that the representation of Hispanics in venires in this Court is not fair and reasonable or that any underrepresentation is due to systematic exclusion of Hispanics.  Instead, they blithely proclaim that these factors are self-evident.  Not so.

The District Court for the District of Columbia operates its own jury wheel, separate from the jury wheel used by the D.C. Superior Court.  The wheel is operated pursuant to applicable federal statutes.  *See generally* 28 U.S.C. §§ 1863 ("Plan for random jury selection") & 1864 ("Drawing of names from the master jury wheel; completion of juror qualification form").  Federal jurors' names come from the licensed driver registration, voter registration, and taxpayer records in the District of Columbia.  These names are combined into a master list, from which jurors are called by random selection.  Once a juror has been called for duty, he or she is released from the wheel for two years.  The jury wheel is totally updated no less often than every four years.  In this case, the Court ordered a special panel because of the anticipated length of trial (initially, up to 3 months); this allowed the Jury Office to advise those who were summoned

3

of the trial's duration so that potential jurors could be excused before jury selection if circumstances[3] prevented their attendance.  Only U.S. citizens sit on federal juries.  *See* 28 U.S.C. § 1865(b)(1) (listing characteristics disqualifying persons from jury service, including that the person "is not a citizen of the United States").  Having decided to seat 16 jurors because of the trial's length, the Court asked for a venire of 70 potential jurors, of whom 50 reported in the morning and 20 in the afternoon.  Jurors' race and ethnicity are not identified until after a potential juror reports for jury selection and completes a questionnaire.  Thus, it is not possible to identify race, ethnicity or other characteristics before the day of jury selection.  The Court finds no flaw in this process that indicates it would result in a systemic underrepresentation of Hispanics or any other identifiable group in the community.

*United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997), noted that "[u]nderrepresentation of a cognizable group in a single venire, without evidence of a greater pattern, is insufficient to establish the 'systematic exclusion of the group' required by *Duren*." *Id.* at 1301.  Defendants have shown no more here.  Assuming that Hispanics constitute 9.5% of D.C.'s resident population, that number does not reveal the percentage of resident Hispanics who are U.S. citizens *and* registered drivers or registered voters or tax payers.  The resident population of Hispanics also includes an unknown number of legal immigrants who have not become citizens and an unknown number of undocumented aliens.  Thus, a bare-bones percentage of Hispanic residents is uninformative.

Further, Defendants acknowledge that they cannot demonstrate any systemic exclusion of Hispanics in the jury-selection process:  "We do not have proper information on the

---

[3]  Potential jurors might be excused due to age, illness, disability that would impede participation, loss of wages during a long trial, committed travel requirements, job exclusion (Capitol Hill) and the like.

number of jurors that were called for this venire only that 70 showed up . . . .  Why did no, or so few, Hispanics show up for jury duty?"  Defs. Mem. at 2.  Answering their own question, Defendants proclaim that "[t]he failure to provide any meaningful method for enforcing the jury summons has amounted to a systematic under-inclusion of Hispanics on the jury venire."  *Id.* They offer nothing beyond rhetoric to support their statement, which is not enough to sustain a *Taylor* challenge.  *See United States v. Bryant*, 523 F.3d 349, 361–62 (D.C. Cir. 2008) (finding defendant failed to show the "'systemic exclusion' . . . required by *Duren*" where defendant relied in large part on allegedly disproportionate number of African Americans in his own jury venire); *see also* 28 U.S.C. § 1867(d) (requiring a "sworn statement of facts which, if true, would constitute a substantial failure" to comply with cross-section requirement as threshold showing for opportunity to access, *inter alia*, "the testimony of the jury commission or clerk").

Since rhetoric is not evidence and there is no evidence that Hispanics are not fairly represented on the jury wheel or that there is systemic underrepresentation of Hispanics in the venire, the Court concludes that Defendants' motion is without merit.  The few Hispanics on this particular jury panel does not make the case.

## II.  EQUAL PROTECTION CHALLENGE

Defendants also contend that their constitutional protections under the Equal Protection Clause of the Fifth Amendment[4] have been violated "because one of the only Hispanic jurors was removed based solely on the basis of race."  Defs. Mem. at 2–3.  Defendants rely on *Batson v. Kentucky*, 476 U.S. 79 (1986), without elaboration.  *See* Defs. Mem. at 3.

---

[4]   Defendants cite the Fourteenth Amendment, Defs. Mem. at 2, but the Fifth Amendment applies to the District of Columbia, which is a federal enclave.  *See Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) ("D.C. is a political entity created by the federal government . . . ." (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954))).

This challenge is untimely. At the close of jury selection, defense counsel advanced a clear objection to the absence of Hispanics on the jury panel and urged the Court to strike the venire entirely. While *Batson* (and not *Taylor*) was cited, the objection went entirely to the paucity of Hispanic jurors. No mention was made of the government's peremptory strike of a single juror and no opportunity was provided for the government to explain its bases for this strike. *See Batson*, 476 U.S. at 99–100 (requiring that a *Batson* objection be "timely"); *see also Haney v. Adams*, 641 F.3d 1168, 1173 (9th Cir. 2011) ("[T]he Supreme Court's proposed remedies for *Batson* violations presuppose a contemporaneous objection."); *Garraway v. Phillips*, 591 F.3d 72, 75–76 (2d Cir. 2010) ("[A] court's determination of whether a prosecutor has used [peremptory strikes] in a discriminatory fashion will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and an assessment of their credibility [and therefore] . . . [i]t is nearly impossible for the judge to rule on such objections intelligently unless the challenged juror either is still before the court or was very recently observed." (quoting *McCrory v. Henderson*, 82 F.3d 1243, 1248 (2d Cir. 1996))).

Even if timely, the *Batson* challenge fails. When asked if she knew any of the four defense counsel, the Juror in question (#0736) responded that she knew Billy Ponds, counsel for Yester Ayala, because Mr. Ponds had previously worked with her father. This acquaintance was approximately ten years old, and the Court did not strike the juror for cause. Still, such a connection would provide an immediate legitimate reason for the government to exercise its peremptory challenge, if such an issue had been timely raised. *See Snyder v. Louisiana,* 552 U.S. 472, 476–77 (2008) (requiring "a race-neutral basis for striking the juror in question"); *see also Miller-El v. Dretke*, 545 U.S. 231, 251 (2005). More critically, a single peremptory challenge from a diverse venire does not demonstrate a case of discriminatory treatment. *See Hernandez v.*

*New York*, 500 U.S. 352, 363 (1991) (adopting into *Batson* context the "totality of the circumstances" test from *Washington v. Davis*, 426 U.S. 229, 242 (1976)); *see also United States v. Hendrix*, 509 F.3d 362, 371 (7th Cir. 2007) ("The critical question in determining whether a defendant has proved purposeful discrimination at the last stage is the persuasiveness of the prosecution's justification for his strike." (citing *Miller–El v. Cockrell*, 537 U.S. 322, 338–39, (2003)).

Defendants' *Batson* challenge will thus be denied.

### III.  SELECTION OF ALTERNATES

Finally, Defendants object to the prejudicial application of the selection of alternates in this case.

The Court authorized five peremptory strikes for each Defendant (15 in all) and nine peremptory strikes for the government.  After those strikes were used, from the first sixteen jurors thus selected, each side could identify any two jurors to serve as alternates.  After a sufficient number of potential jurors had been selected, all peremptory strikes exercised, and four alternates identified, the jury was excused and told to report for trial on June 18, 2013.  Within an hour, court staff discovered a clerical error: one potential juror who was *not* struck by either party or the Court was inadvertently not included in the list of sitting jurors.  All parties were immediately notified by email—it being early Friday evening, pre-trial motions hearings for a single defendant were scheduled for Monday, June 17, and trial is scheduled to start on Tuesday, June 18.  As Defendants recognize, "[a] juror ha[d] been skipped in the juror list and should have been juror #3 but was left off the original jury make-up by the Court.  The Court renumbered the jurors resulting in the original juror # 16 being excluded from the jury as newly constituted." Defs. Mem. at 3.

Defendants complain that they were restricted to selecting a fourth alternate between "available jurors 15 and 16, as Seats 12 and 14 are the Government alternates and 13 is the remaining Defense alternate." *Id.* at 3. Defendants attribute this restriction to the "top down" selection process announced by the Court, from which they deduce that "the selection of this alternate can not [sic] be any juror prior to juror # 12 (now 13)." *Id.* The Court is at a loss to explain Defendants' complaint. Once all strikes for cause were made, the parties could decide which jurors to strike peremptorily. Thereafter, the jury of 16 was identified, but the Court did not want the jurors to know the alternates among them. Therefore, both sides were given two jurors to select as alternates, *i.e.*, four in all, who would not sit to deliberate unless needed. Defense counsel could have chosen any two of the sixteen jurors to be seated—to select only among Jurors Numbers 13, 14, 15, and 16 would not have achieved anonymity for alternates. Varying the alternates randomly among remaining seats is the prevailing practice in this Court and is reflected in the standard Criminal Jury Instructions for the District of Columbia Instruction 1.107,[5] which was provided to the parties in the Court's list of proposed jury instructions. The reference to "top down" was only made in answering a question from government counsel as to whether the Court would select jurors from the top of the list and down through those remaining until 16 were selected or from the bottom of the list and up through those remaining. The Court answered that it selects from the top of the jury list down—to identify sixteen qualified jurors. Neither the question nor its answer had anything to do with alternate jurors, and the confusion of defense counsel on the point is incomprehensible. If they

---

[5] Instruction 1.107 provides: "Before any of you even entered the courtroom, we randomly selected the alternates' seats. I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. As any seat might turn out to be an alternate's seat, it is important that each of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention."

had a question, they had immediate access to the Court's law clerk for the answer, without writing briefs and wasting their time and the Court's.

This motion is also without merit and is denied.

## IV.  CONCLUSION

For the reasons set forth above, all three of the grounds for relief raised by Defendants at the close of jury selection and in their memorandum, Dkt. 373 will be denied.  A memorializing Order accompanies this Memorandum Opinion.

DATE: June 17, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge