IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Criminal Action No. 10-cr-256-RCL-14, 16 |
| vs. | ) | Washington, DC |
| MOISES HUMBERTO RIVERA-LUNA (14), AND TOKIRO RODAS-RAMIREZ (16), Defendants. | ) | April 20, 2026 Time: 9:22 a.m. |

TRANSCRIPT OF JURY TRIAL
HELD BEFORE
THE HONORABLE JUDGE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

For Plaintiff: Nihar Ranjan Mohanty
U.S. ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
Violent Crime and Narcotics Trafficking Section
555 4th Street, NW
Room 4120
Washington, DC 20530

Mark Levy
United States Attorney's Office
601 D Street NW
Washington, DC 20001

For Defendant (14): Alfred Guillaume, III
LAW OFFICES OF
ALFRED GUILLAUME III, LLC
1350 Connecticut Avenue NW
Suite 308
Washington, DC 20036

(Appearances continued on the following page.)

A P P E A R A N C E S

For Defendant (16): Robert A. Feitel
LAW OFFICE OF ROBERT FEITEL
1300 Pennsylvania Avenue NW
Suite 1505
Washington, DC 20008

Spanish interpreter: Teresa Roman

---

Court Reporter: Rebecca Monroe, RPR
Official Court Reporter
United States Courthouse, Room 6706
333 Constitution Avenue, NW
Washington, DC 20001

P R O C E E D I N G S

THE DEPUTY CLERK: This is criminal case 10-256, United States of America versus Defendant 14, Moises Humberto Rivera-Luna, and defendant 16, Tokiro Rodas-Ramirez.

For the record, the interpreter was previously sworn. Starting with the Government, please approach the podium and state your appearance for the record.

MR. MOHANTY: Good morning, Your Honor. Nihar Mohanty and Mark Levy for the United States.

MR. GUILLAUME: Good morning, Your Honor. Alfred Guillaume for Mr. Rivera-Luna seated to my left.

MR. FEITEL: Good morning, Your Honor. Robert Feitel for Mr. Rodas-Ramirez.

THE COURT: All right. Any great revelations from any counsel before I say what we can do?

MR. MOHANTY: Thank you, Mr. Feitel. Your Honor, the Government believes the Court should inquire if they have a -- if they have a partial verdict and, if so, accept that.

THE COURT: Well, they indicated they do.

MR. MOHANTY: Yeah.

THE COURT: So I would assume I would say that since they have a partial verdict, they should prepare the verdict form and I will reread them this page 39 from the instructions, tell them what is on 39, and that they should prepare the verdict form. And that when they return to the courtroom with

a verdict form, I would -- that they would hand it to the clerk as to what they have decided.

I would ask you all in advance then if there is going to be a request for a poll -- I won't tell them then, but if there is a request for a poll, I would conduct the poll at that time and I would instruct them on the polling the jury so -- at that time, not now. After the poll, on the partial verdict, then I would entertain any motions for what happens then.

MR. MOHANTY: Thank you, Your Honor. No objection from the Government to that.

THE COURT: I'm sorry?

MR. MOHANTY: I said no objection to the -- from the Government to that proposal.

THE COURT: And obviously I would consult with counsel after the partial verdict and the polling of the jury.

MR. FEITEL: Good morning, Your Honor. So Mr. Guillaume and I spent some time talking about this and we have a slightly different take on this.

One, given that the jury, contrary to Your Honor's instructions, revealed the vote split, if we take any partial verdict I think invariably there needs -- there's going to be a mistrial on the remaining counts because we now --

THE COURT: I think that's likely, but I'll wait and see what happens with the partial verdict.

MR. FEITEL: Right. Agreed.

But the more problem -- there are two more problematic parts of this. One is it is a gigantic guess on everyone's part as to what the note that says we have a verdict on one count means. It could mean anything.

In our last trial, the jurors said they had a verdict and they had a blank sheet of paper. I think lawyers see the word "verdict" as something different than members of the jury. It never occurred to me.

Moreover, one of the jurors, according to the note, is not deliberating and there is some possibility that there has been a problematic or improper conduct on behalf -- on behalf of one of the jurors. So we think it would be better to proceed without taking a partial verdict now and to try to determine what exactly -- without getting into the deliberations of the juror because we do not want to know what's going on. And, more importantly, is there a juror who's not deliberating.

And so, in that regard, I have a question for Your Honor.

THE COURT: Okay.

MR. FEITEL: Because this is -- we're all here advocating for our client. This is not a neutral philosophical discussion at, you know, Harvard University.

If it were to be the case that one of the jurors has not been fulfilling the terms of their oath and has not been

deliberating, would it be Your Honor's intention to recall one of the alternates? And if it were -- if it were clear to everybody, would it be your intention to recall one of the alternates and begin anew as opposed to ordering the jury with 11 to continue deliberating?

THE COURT: I think that the 11 can only be with consent, is that right?

MR. FEITEL: I think the law has been changed. I think Your Honor can dismiss a juror -- I could be wrong about this, but I think the law has evolved.

So, I mean, our preference would be in that event to begin anew because our clients I think have a constitutional right to a jury of 12 and we would prefer that to happen. But our preference would be to try to figure out if there is actually a verdict, and more importantly is there someone who is not deliberating in violation of their oath.

THE COURT: Well, the problem is they say in the note that the person did deliberate and reached a verdict, so --

MR. FEITEL: The notes are totally inconsistent. So it depends on how you want to view it. If you -- if -- my only -- our only concern is this, if we view it sort of in the most cheery way that, yes, they've somehow overcome their initial inertia and they continue deliberating and it turns out that the notes don't mean what they say, which seems to be more common than not, then we are -- then I think we will have

precipitated a mistrial without any doubt.

So our position is we would ask Your Honor to inquire, at least briefly, of the foreperson in a noncoercive way, like, is there -- are there deliberations that are ongoing and has the -- have all the jurors been actively deliberating.

THE COURT: Well, that's really contrary to the note so I can't go that way.

I think I have to say in the note they say they have reached a decision on one count, we have reached a verdict on one count, so I think I have to accept that. And I don't think I have grounds to inquire into a verdict that they say they've reached. So I think I have to go this way.

I understand that, but I think questioning them on the verdict, if they're prepared to present the verdict form, is not something I can do.

MR. FEITEL: All right.

THE COURT: Or should do.

MR. FEITEL: Then we will sit here and we will all await the return of more information.

Thank you, Your Honor.

THE COURT: Okay.

MR. GUILLAUME: Your Honor, just --

THE COURT: Yes.

MR. GUILLAUME: -- so the record is clear, I am in agreement with cocounsel on behalf of Mr. Rivera-Luna.

THE COURT: Okay. Okay. I mean, their note says we have reached a verdict on one count. I understand I don't know what it is either, but I think since I instructed them that we would accept a verdict, I have to accept it and we'll see what it is and then we'll deal with it there.

I'm concerned about how it was done too, but I don't think the Court can reject a verdict that's reached. Bring the jury -- well, we can't do it until 10. I'm sorry. Okay. At 10:00 we'll resume and I'll advise the jury that I'll accept the verdict.

I guess, at that point, if we're going to poll the jury, it would have to be done at that point. I'll ask you all then and you might look at the Red Book instruction on polling and see if you're going to request a poll or not. The poll is on -- the Court cannot poll absent a request, so -- but any party can request the poll.

MR. FEITEL: In the event of a guilty verdict, as to my client -- as to our client, we would request a poll as to --

THE COURT: If you look at the -- at the Red Book the way I do it is I advise -- I will advise the jury now when they go out that there would be a poll -- there could be a poll and I advise them how the poll works, that they each are asked whether the verdict is announced it's their verdict, and they answer yes or no. The clerk will call their number and they'll answer yes or no, just so they're comfortable with how it works

when they come back into the courtroom.

MR. GUILLAUME: Yes, Your Honor. I would also request a poll on behalf of a verdict -- guilty verdict on behalf my client.

THE COURT: All right. We'll call the jury. And then -- once everybody is here.

Assuming there is a verdict, then obviously I'll consider any motions and probably do that.

Let's see if this system is working.

THE DEPUTY CLERK: It is. I tested it this morning.

THE COURT: Okay. All right. I'll probably consider that before we excuse the jury back.

THE DEPUTY CLERK: All rise.

(Recess.)

THE COURT: Our last juror just arrived, so we'll call them in.

THE DEPUTY CLERK: Jury panel.

(Jury panel enters the courtroom.)

THE COURT: You may be seated. Good morning, ladies and gentlemen. I hope you had a decent weekend.

I consulted with counsel as a result of your note and in your note you said we've reached a verdict on one count; however, discussions have once again stalled. After talking to counsel, I want to repeat the instruction on page 39 of my original instructions.

The fact that you may find any one defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment. For that defendant, unless I've instructed you otherwise, you may find any one or more of the defendants guilty or not guilty on any one or more counts of the indictment, and you may return different verdicts as to different defendants as to different counts.

At any time during your deliberations, you may return your verdict of guilty or not guilty with respect to any defendant on any count. So if you have reached a verdict on any one count, I'll ask the foreperson, after consulting with all of you to fill out the verdict form, return it to the marshal who'll give it to me and I'll bring you back in the courtroom. The verdict form then will be read in open court and then I will meet with counsel and talk further about how to instruct you further after we have that following the instructions that I originally gave you on page 39 and we'll take care of that one count first then.

I think that's the next step for me to follow at this time. We'll take a recess. Thank you very much, ladies and gentlemen.

(Jury panel leaves the courtroom.)

THE COURT: Describing polling to them now I decided is not a good idea. We'll do it when we come back. I'll take

a recess and we'll see how long this takes.

(Recess.)

THE COURT: All right. Based on the new note, which says after your discussions we discussed with the jury and no longer have a consensus on the count we had previously reached a verdict on. It appears to me that I would need to ascertain from the foreperson whether the -- it's the same juror that was being discussed in the Friday afternoon note and I would have to ask then if it was the same person without revealing deliberations, can you answer yes or no as to whether that juror has been willing to discuss the evidence.

If the juror was not willing to discuss the evidence, then I would be inclined to entertain a motion to dismiss the juror. And based on the current reading of Rule 23(b)(c) -- 23(c) -- no, that's not right. 23(b)(3), after the Court -- after the jury has retired to deliberate, the Court may permit a jury of 11 persons to return a verdict even without a stipulation by the parties if the Court finds good cause to excuse a juror.

If the answers to those questions were, in fact, a yes, I would find there is good cause to excuse the juror and I would allow deliberations to continue with 11 jurors. If you want to object to that, I'll give you an opportunity to object obviously. And if you want to object by asking those questions, you obviously can also object or if you have some

other approach you want to make, you can state that now.

MR. FEITEL: So on behalf of my client, we do object. I think Your Honor knows full why we object. The jury has been deliberating and they keep changing their minds back and forth, I don't think there's reason to think really that someone is not deliberating, but I think it's problematic to ask the foreperson to comment on whether someone else has been engaging in deliberations or not because this last note doesn't say anything about the matter of someone not talking, that was -- that was --

THE COURT: Well, that's what she said on Friday afternoon. And I said -- she said this particular juror also stated on the first day and they're comfortable not reaching a consensus and we're unsure how to move forward. It doesn't appear we'll reach a consensus, she said. If I ask and it's the same juror who is now refusing to -- if they've been not deliberating all along and not discussing the evidence all along, I think that's a problem.

MR. FEITEL: I would agree, but if that doesn't seem to be the case because they did reach a verdict and then they changed their minds. Every time we tell them to deliberate, they keep telling us that they're deadlocked. My -- on behalf of my client, I move for a mistrial. I think this is just one of those cases where people are just not going to be able to agree ever. And so I would object to any questioning of the

juror.

And if Your Honor is going to, I just ask that the questions be neutral, that they not suggest the answer for obvious reasons.

THE COURT: Okay. How do you -- how would you phrase the question?

MR. FEITEL: Have all the -- I would not focus on one juror, because I think that sort of is problematic. I would just say: Have the jurors been engaging in deliberations and has everyone been -- and if the answer is yes, I would leave it alone.

It's really hard to structure a question. If you say to them has someone not --

THE COURT: Saying that is going to ignore the note from Friday.

MR. FEITEL: But I think the note from Friday has been superseded by the note from today.

THE COURT: She's going to tell us about deliberations if I give an open-ended question like that.

MR. FEITEL: No, yes or no, has the jury -- fair enough, Your Honor.

I just think if Your Honor were to say to her -- has the jury -- yes or no, has the jury, since returning today, been engaged in deliberations.

And if the answer is yes, then I think that's really

the end of it.

THE COURT: I can say that.

MR. FEITEL: As opposed to identifying one person singling somebody out. That requires the foreperson to become the speaker for the mental state of some other juror, I think that that's problematic as well.

And if this note -- if the last note this morning had said and we're back with that same juror who won't deliberate, maybe there would be reason to inquire specifically, but I think that the juror said something -- they changed their minds again. So I object to any questioning, I move for a mistrial, but if Your Honor is going to do it, I ask that it be as generic as possible with a yes or no answer.

THE COURT: She says that they had a consensus and it no longer says that someone changed their mind.

MR. FEITEL: Yes, sir, which is exactly the -- that is what deliberations are about. I'm not -- I -- my position point 1 is that there is no reason to suspect that there is a failure to deliberate in the jury.

THE COURT: Well, my first question is, is it the same person.

MR. FEITEL: Well, I think that's a question that should not be asked, because then we're going to single out somebody.

I'll just say this, because I've gone back over the

notes. The original note, which talked about being deadlocked, which is the note from April 16th, at 3:45 p.m., it's docketed as Number 825, that note said that they are not able to reach a verdict. And it said we are not in agreement and some jurors have expressed they are firm in their votes and unable to come to an agreement.

When we read that one, I thought it was more -- because I asked the Government how many is it going to take before you go away. Mr. Mohanty told me it would take 12, but...

So I think that there has been movement in jurors and this last note doesn't say anything. The jury seemed perfectly capable of telling Your Honor, hey, we are not able to deliberate, someone is not -- but this last note says nothing about it. All it says is we followed Your Honor's instructions, which is what we want, and we haven't been able to reach a verdict. So our position remains that a mistrial ought to be declared and that -- and that asking questions is extraordinarily problematic and likely only to create more chaos.

MR. GUILLAUME: Your Honor, I also join in the request for a mistrial on behalf of my client, Mr. Rivera-Luna, for the reasons stated by cocounsel.

Thank you.

MR. MOHANTY: Your Honor, may I be heard?

We concur with the Court's suggestion, Your Honor. I would point out earlier this morning when we were together at -- before the jury arrived at 9:15 approximately, Mr. Feitel and Mr. Guillaume were asking the Court to do exactly this, to inquire of the foreperson about the state of deliberations and the Court said that it did not think it could given that their note had said there had been a partial verdict.

But I would remind the Court too that the very first note we got in this case was on April 15th, where it said, We have two counts where we are divided and unable to come to a consensus. That was the very first day of deliberations at probably only about two hours of deliberations, Your Honor.

So given that and their note on Friday, we do think it's appropriate for the Court to ask the limited questions that it suggested.

Thank you, Your Honor.

THE COURT: All right. I'll adhere to how I was going to do it in the first place. We'll bring the juror in -- the foreperson in and ask the questions that I indicated.

THE DEPUTY CLERK: Juror.

(Thereupon, the foreperson approached and conferred with the Court and counsel as follows:)

THE COURT: This is somewhat unusual, but in light of your note Friday and the note this morning, let me ask it this way.

Were all of the jurors willing to deliberate and discuss the evidence this morning or is that not possible?

THE FOREPERSON: For one of the counts, we were in agreement and then this morning, we weren't. And then I know we have one juror who is very firm on their stance and doesn't really want to deliberate further on the others. But there are two different jurors, if that makes sense.

THE COURT: Well, there was a verdict agreed upon Friday though?

THE FOREPERSON: Correct, yes.

THE COURT: And then there was more deliberation today and that changed?

THE FOREPERSON: Yeah, when we went back to the jury room, there was more deliberation and we realized that we were no longer in agreement.

THE COURT: On any count?

THE FOREPERSON: Correct.

THE COURT: Okay. And --

MR. FEITEL: Can we be heard?

THE COURT: All right. Based on that then, I guess the point at this point then would be is there any reason you couldn't continue deliberating and maybe still reach an agreement?

THE FOREPERSON: I think the problem that we're running into is on two of the counts someone is very firm and

doesn't want to deliberate and we're not close to an agreement on that then. And so even if we keep deliberating, we keep running into that issue of that we're not --

THE COURT: Okay. But on one count -- could all the jurors agree on one count?

THE FOREPERSON: I don't think on this point, no.

THE COURT: At the same point. Okay. All right. I won't get into anymore.

Let me excuse you and I'll talk to counsel again.

THE FOREPERSON: Thank you, Your Honor.

(Foreperson left the bench conference.)

MR. FEITEL: Your Honor, I can come to the lectern and ask for a mistrial or I can just sit here and do it.

THE COURT: You can sit there.

MR. FEITEL: I'll be glad to come up and talk to Your Honor about this.

It does not seem that the jurors are going to be able to reach a verdict. The foreperson so said, it's not just one juror, it's two, and I think we would need to really delve into the weeds to figure out what she actually means. So on behalf of my client, I ask the Court to declare a mistrial in this case.

MR. GUILLAUME: Your Honor, I would join in that request on behalf of Mr. Rivera-Luna.

Thank you.

MR. MOHANTY: Court's indulgence.

(Pause.)

MR. MOHANTY: Your Honor, as much as I hate to say this, I think from what I understood she was indicating that they cannot reach a verdict on any count, and the Court has already given the Thomas instruction. So I suppose the good news is I'll get to see you again, Your Honor.

Thank you.

THE COURT: All right. At this time I'll bring the jury in the courtroom and tell them that I've declared a mistrial and I'll excuse the jury.

I will shake the hands of the jurors in the jury room before they leave. Thank them for their service. Those who want to speak to counsel afterwards, I'll give them the opportunity to speak to counsel. If counsel want to talk to them after I have thanked them in the jury room, counsel may speak to those who wish to speak to counsel on both sides in the jury room before they -- those who don't want to speak to counsel, obviously can leave.

THE DEPUTY CLERK: Jury panel.

(Jury panel enters the courtroom.)

THE COURT: You can be seated.

All right. Ladies and gentlemen, based on my discussion with the foreperson after your last note, I've decided to declare a mistrial in this case. I regret that

you're not able to come to a conclusion in the trial, I thank you on behalf of the Court and the community for your conscientious efforts to try to reach a decision in this case.

Sometimes this happens, it's not often, but this is -- we could not fairly and impartially administer justice in our community without good citizens like you coming down and helping us, so I want to shake each of your hands before you leave here.

I will also tell counsel that they have the opportunity, if those of you who are willing to talk to counsel before you leave, counsel will come in the jury room. And while I'm still there, those of you who would like to speak to counsel and help them figure out what happened and whether they should try this case again and what would happen if it were tried again -- counsel find it helpful to hear direct from jurors any advice they have about whether it should or could be retried, and what would happen at another trial so it would be useful to counsel to know what jurors' views were and are.

What I say to each of you is be respectful of each other's views to the extent that you do talk about that kind of thing outside of the jury room. But it can help counsel understand what happened and what went on and still it's totally up to you whether you want to speak to anybody or whether you just want to walk out.

There is a First Amendment right of jurors, if the

press contacts you, I say you speak by what you did rather than to the press, but a press person sitting in the courtroom, she has a right to talk to you if you want to talk to her in the hallway as you leave, it's up to you.

I usually say you speak with your verdict, but here you have no verdict. So it's up to you, I can't order a jury not to talk to the press and I don't order a jury not to talk to the press. So it's up to you what you do in any event. I do -- those of you who are willing to talk to counsel, it helps them figure out what should be the next step.

Obviously, I do want to come off the bench and thank all of you for your conscientious efforts to try and reach a verdict. We could not fairly and impartially administer justice. I know it's an imposition on all of you and I appreciate that on behalf of the Court and the community.

I'll take a short recess.

(Jury panel leaves the courtroom.)

THE COURT: I will reconvene in the courtroom after the counsel have an opportunity to speak with them too so we can set a new date.

(Recess.)

THE COURT: Okay. Back on the record. 70 days for the retrial would be June 29th. Does that work for counsel?

MR. GUILLAUME: Your Honor, if I can begin on behalf of Mr. Rivera-Luna, I conceivably don't have any availability

during that time, not until potentially September.

I have a month-long trial -- four to six weeks with Judge Jackson starting July 6th and then I have plans to be out of the country the end of August, returning beginning of September. I don't have anything scheduled in September, but I do have out of -- travel plans in October, but I think September would be my first availability on behalf of my client, Your Honor.

THE COURT: Mr. Feitel.

MR. GUILLAUME: Yes, and I would -- I would waive speedy trial, Your Honor, just so the record is clear.

MR. FEITEL: I have a trial scheduled for the first week of July in the EDVA. They are completely unlikely to change that.

THE COURT: They're quick.

MR. FEITEL: They're not changing that trial date. Even if I die, they'll make Ms. Rhee try it alone.

And I also have a trial that's set for the second week of March as of now. That case might go away.

THE COURT: Okay.

MR. FEITEL: But the trial is on the docket and it's not 100 percent clear we can reach a verdict [sic].

I would be available in September as well. Ms. Rhee and I are not available for most of August, unfortunately.

And on behalf of my client, we'll waive speedy trial

until we can pick a date that's good for everybody.

THE COURT: So August 31st or September 1st would work?

MR. FEITEL: I have -- my phone is off in this courtroom because it's never going to go off in front of Your Honor.

When is Labor Day weekend?

THE COURT: September 7th is Labor Day weekend.

MR. FEITEL: If possible, I wonder if we could set it as of September 7th. I believe that our youngest daughter -- our youngest daughter is definitely starting college and usually move in is over the -- or right around the time of Labor Day, right before, so...

THE COURT: All right. September 7th, any conflict with that?

THE DEPUTY CLERK: The 8th, since the 7th is --

MR. GUILLAUME: No, Your Honor. No conflict with that. I am completely free the month of September.

THE COURT: And the Government?

MR. MOHANTY: Your Honor, I am scheduled to be in trial in -- on September 14th, but I will get out of that case.

Mr. Levy, though, is starting a trial on September 3rd, he expects to be done by September 17th. Maybe we could pick a jury then, Your Honor, and then go into the following weeks.

Your Honor, I think the Court can -- as the Court knows, for the continuity of counsel, toll the speedy trial clock. I would ask for an interim status. As the Court can guess, we will have to discuss potential disposition, but I -- given the -- I told defense counsel I'm not sure that we can ever get to appropriate numbers for both parties, so I do think it makes sense to have a trial date on the calendar.

Thank you, Your Honor.

THE COURT: Okay.

MR. GUILLAUME: Your Honor, I'll just say that on behalf of my client, Mr. Rivera-Luna, Your Honor, I have already purchased and spent a substantial amount of money on travel starting October 8th. I am more than happy to start trial -- from October 8th to the 12th, I would be gone, one of those days is a holiday. But I'm just concerned if we started trial the week of September 21st, we may not conclude by October the 8th when I am supposed to be leaving.

But I am free September -- I understand Mr. Levy's predicament, but I wanted to flag that for the Court in the event that the Court would allow me to attend the travel plans for that -- those two days, I could start it on the 17th.

THE COURT: I missed what -- if we did it September the 8th, what was the Government's question?

MR. GUILLAUME: I believe Mr. Levy is in a trial, Your Honor.

MR. MOHANTY: That's correct, Your Honor. Mr. Levy starts a trial on September 3rd and I think it's expected to go to September 10th.

Yes, Your Honor.

THE COURT: That would go how long?

MR. MOHANTY: For a week from September 3rd to September 10th.

THE COURT: Oh, the 13th -- to the 10th.

MR. MOHANTY: I'm sorry, September 3rd to September 10th is when his trial is scheduled, Your Honor.

THE COURT: So if we started the 11th -- what was the date you had to leave then?

MR. GUILLAUME: Your Honor, I have a flight on October the 8th.

THE COURT: Yeah, so September 11th would not be a problem for you.

MR. GUILLAUME: I don't think it would, Your Honor.

(Pause.)

THE COURT: Yeah. All right.

What was Mr. Levy's conflict?

MR. LEVY: Your Honor, I'm going to be in trial in front of Judge Reyes from Thursday, September 3rd, and we're estimating that it's going to be about one week long. So I should be done by the end of the following week --

THE COURT: Oh, okay.

MR. LEVY: -- like Thursday the --

THE COURT: All right. So we could do the September 14th anyway, then. You'll be out.

MR. LEVY: I should be out.

THE COURT: Right. Okay. Then all counsel would be available September 14th.

MR. GUILLAUME: Yes, Your Honor.

MR. FEITEL: Yes.

THE COURT: All right. And we're expecting two weeks or less from our experience this time?

MR. MOHANTY: Yes, Your Honor.

THE COURT: All right. Now, in terms of a status, how much time does the Government need to figure out whether there might be some disposition?

MR. MOHANTY: I would ask for two weeks, Your Honor.

THE COURT: Okay. How would 11:30 on May 1st look?

MR. MOHANTY: I'm sorry, Your Honor. I actually am going to be out of town that day. Could I ask for April 30th.

THE COURT: April 30th?

MR. MOHANTY: Is that a good date for counsel?

THE COURT: I wish I knew.

MR. MOHANTY: Mr. Feitel is asking for the week of May 4th if Your Honor is available, Your Honor.

THE COURT: May 4th at --

(Pause.)

THE COURT: I guess we better do May 4th at 2 p.m. I don't know what that other thing is.

MR. MOHANTY: Thank you, Your Honor.

THE COURT: All right.

MR. GUILLAUME: Thank you, Your Honor.

THE COURT: All right. Anything else we need to do today?

MR. MOHANTY: Not from the Government, Your Honor.

Thank you.

THE COURT: All right.

MR. GUILLAUME: No, Your Honor. Thank you.

THE COURT: The Court will be in recess.

Thank you much, counsel.

THE DEPUTY CLERK: All rise.

(Proceedings concluded at 11:51 a.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, REBECCA MONROE, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 20th day of April, 2026

/s/ Rebecca Monroe
_________________________________

Rebecca Monroe, RPR
Official Court Reporter
Room 6706
333 Constitution Avenue, N.W.
Washington, D.C.  20001

## 1

**1** [1] - 14:18
**10** [1] - 8:8
**10-256** [1] - 3:2
**10-cr-256-RCL-14** [1] - 1:3
**100** [1] - 22:22
**10:00** [1] - 8:9
**10th** [4] - 25:3, 25:7, 25:8, 25:10
**11** [4] - 6:5, 6:6, 11:17, 11:22
**11:30** [1] - 26:16
**11:51** [1] - 27:15
**11th** [2] - 25:11, 25:15
**12** [2] - 6:13, 15:9
**12th** [1] - 24:14
**1300** [1] - 2:3
**1350** [1] - 1:22
**13th** [1] - 25:8
**14** [3] - 1:6, 1:20, 3:3
**14th** [3] - 23:21, 26:3, 26:6
**1505** [1] - 2:3
**15th** [1] - 16:9
**16** [4] - 1:7, 1:3, 2:2, 3:4
**16th** [1] - 15:2
**17th** [2] - 23:23, 24:21
**1st** [2] - 23:2, 26:16

## 2

**2** [1] - 27:1
**20** [1] - 1:6
**20001** [2] - 1:19, 2:9
**20008** [1] - 2:4
**20036** [1] - 1:23
**2026** [1] - 1:6
**20530** [1] - 1:17
**21st** [1] - 24:16
**23(b)(3** [1] - 11:15
**23(b)(c** [1] - 11:14
**23(c** [1] - 11:15
**29th** [1] - 21:23

## 3

**308** [1] - 1:22
**30th** [2] - 26:18, 26:19
**31st** [1] - 23:2
**333** [1] - 2:8
**39** [4] - 3:23, 3:24, 9:24, 10:18
**3:45** [1] - 15:2
**3rd** [5] - 23:23, 25:2, 25:6, 25:9, 25:22

## 4

**4120** [1] - 1:16
**4th** [4] - 1:16, 26:23, 26:24, 27:1

## 5

**555** [1] - 1:16

## 6

**601** [1] - 1:19
**6706** [1] - 2:8
**6th** [1] - 22:3

## 7

**70** [1] - 21:22
**7th** [4] - 23:8, 23:10, 23:14, 23:16

## 8

**825** [1] - 15:3
**8th** [6] - 23:16, 24:13, 24:14, 24:17, 24:23, 25:14

## 9

**9:15** [1] - 16:3
**9:22** [1] - 1:6

## A

**a.m** [2] - 1:6, 27:15
**able** [6] - 12:24, 15:3, 15:13, 15:16, 18:17, 20:1
**absent** [1] - 8:15
**accept** [5] - 3:18, 7:10, 8:4, 8:9
**according** [1] - 5:9
**Action** [1] - 1:3
**actively** [1] - 7:5
**adhere** [1] - 16:17
**administer** [2] - 20:5, 21:13
**advance** [1] - 4:3
**advice** [1] - 20:16
**advise** [4] - 8:9, 8:20, 8:22
**advocating** [1] - 5:22
**afternoon** [2] - 11:8, 12:12
**afterwards** [1] - 19:14
**agree** [3] - 12:19, 12:25, 18:5
**agreed** [2] - 4:25, 17:8
**agreement** [7] - 7:25, 15:4, 15:6, 17:4, 17:15, 17:23, 18:1
**Alfred** [2] - 1:20, 3:10
**ALFRED** [1] - 1:21
**allow** [2] - 11:22, 24:20
**alone** [2] - 13:11, 22:17
**alternates** [2] - 6:2, 6:4
**Amendment** [1] - 20:25
**AMERICA** [1] - 1:3
**America** [1] - 3:3
**amount** [1] - 24:12
**AND** [1] - 1:7
**anew** [2] - 6:4, 6:12
**announced** [1] - 8:23
**answer** [7] - 8:24, 8:25, 11:10, 13:3, 13:10, 13:25, 14:13
**answers** [1] - 11:20
**anyway** [1] - 26:3
**appear** [1] - 12:15
**appearance** [1] - 3:7
**appearances** [1] - 1:25
**appreciate** [1] - 21:15
**approach** [2] - 3:6, 12:1
**approached** [1] - 16:21
**appropriate** [2] - 16:14, 24:6
**April** [4] - 1:6, 15:2, 16:9, 26:18
**april** [1] - 26:19
**arrived** [2] - 9:15, 16:3
**ascertain** [1] - 11:6
**assume** [1] - 3:21
**assuming** [1] - 9:7
**attend** [1] - 24:20
**Attorney's** [1] - 1:18
**ATTORNEY'S** [1] - 1:14
**August** [3] - 22:4, 22:24, 23:2
**availability** [2] - 21:25, 22:7
**available** [4] - 22:23, 22:24, 26:6, 26:23
**Avenue** [3] - 1:22, 2:3, 2:8
**await** [1] - 7:19

## B

**based** [4] - 11:3, 11:14, 17:20, 19:23
**become** [1] - 14:4
**BEFORE** [1] - 1:10
**begin** [3] - 6:4, 6:12, 21:24
**beginning** [1] - 22:4
**behalf** [16] - 5:11, 5:12, 7:25, 9:3, 9:4, 12:2, 12:22, 15:22, 18:20, 18:24, 20:2, 21:15, 21:24, 22:7, 22:25, 24:11
**believes** [1] - 3:17
**bench** [2] - 18:11, 21:11
**better** [2] - 5:12, 27:1
**blank** [1] - 5:6
**Book** [2] - 8:13, 8:19
**briefly** [1] - 7:3
**bring** [4] - 8:7, 10:14, 16:18, 19:9
**but..** [1] - 15:10

## C

**calendar** [1] - 24:7
**cannot** [2] - 8:15, 19:5
**capable** [1] - 15:13
**care** [1] - 10:19
**case** [10] - 3:2, 5:24, 12:20, 16:9, 18:22, 19:25, 20:3, 20:14, 22:19, 23:21
**cases** [1] - 12:24
**change** [1] - 22:14
**changed** [5] - 6:8, 12:21, 14:10, 14:15, 17:12
**changing** [2] - 12:4, 22:16
**chaos** [1] - 15:20
**cheery** [1] - 6:22
**citizens** [1] - 20:6
**clear** [4] - 6:2, 7:24, 22:11, 22:22
**CLERK** [8] - 3:2, 9:10, 9:13, 9:17, 16:20, 19:20, 23:16, 27:14
**clerk** [2] - 4:1, 8:24
**client** [11] - 5:22, 8:18, 9:4, 12:2, 12:23, 15:22, 18:21, 22:8, 22:25, 24:11
**clients** [1] - 6:12
**clock** [1] - 24:3
**close** [1] - 18:1
**cocounsel** [2] - 7:25, 15:23
**college** [1] - 23:11
**COLUMBIA** [2] - 1:1, 1:14
**comfortable** [2] - 8:25, 12:13
**coming** [1] - 20:6
**comment** [1] - 12:7
**common** [1] - 6:25
**community** [3] - 20:2, 20:6, 21:15
**completely** [2] - 22:13, 23:18
**conceivably** [1] - 21:25
**concern** [1] - 6:21
**concerned** [2] - 8:6, 24:15
**conclude** [1] - 24:16
**concluded** [1] - 27:15
**conclusion** [1] - 20:1
**concur** [1] - 16:1
**conduct** [2] - 4:5, 5:11
**conference** [1] - 18:11
**conferred** [1] - 16:21
**conflict** [3] - 23:14, 23:17, 25:20
**Connecticut** [1] - 1:22
**conscientious** [2] - 20:3, 21:12
**consensus** [5] - 11:5, 12:14, 12:15, 14:14, 16:11
**consent** [1] - 6:7
**consider** [2] - 9:8, 9:11
**Constitution** [1] - 2:8
**constitutional** [1] - 6:12
**consult** [1] - 4:14
**consulted** [1] - 9:21
**consulting** [1] - 10:12
**contacts** [1] - 21:1
**continue** [4] - 6:5, 6:23, 11:22, 17:22
**continued** [1] - 1:25
**continuity** [1] - 24:2
**contrary** [2] - 4:19, 7:6
**correct** [3] - 17:10, 17:17, 25:1
**counsel** [28] - 3:15, 4:15, 9:21, 9:24, 10:16, 16:22, 18:9, 19:14, 19:15, 19:16, 19:17, 19:19, 20:9, 20:10, 20:11, 20:13, 20:15, 20:18, 20:21, 21:9, 21:19, 21:23, 24:2, 24:5, 26:5, 26:20, 27:13
**count** [15] - 5:4, 7:9, 7:10, 8:2, 9:22, 10:2, 10:3, 10:11, 10:12, 10:19, 11:5, 17:16,

18:4, 18:5, 19:5
**country** [1] - 22:4
**counts** [6] - 4:22, 10:6, 10:8, 16:10, 17:3, 17:25
**court** [1] - 10:15
**COURT** [71] - 1:1, 3:14, 3:19, 3:21, 4:11, 4:14, 4:23, 5:20, 6:6, 6:17, 7:6, 7:17, 7:21, 7:23, 8:1, 8:19, 9:5, 9:11, 9:15, 9:19, 10:24, 11:3, 12:11, 13:5, 13:14, 13:18, 14:2, 14:14, 14:20, 16:17, 16:23, 17:8, 17:11, 17:16, 17:18, 17:20, 18:4, 18:7, 18:14, 19:9, 19:22, 21:18, 21:22, 22:9, 22:15, 22:20, 23:2, 23:8, 23:14, 23:19, 24:9, 24:22, 25:5, 25:8, 25:11, 25:15, 25:19, 25:25, 26:2, 26:5, 26:9, 26:12, 26:16, 26:19, 26:21, 26:24, 27:1, 27:4, 27:6, 27:10, 27:12
**Court** [23] - 2:7, 2:7, 3:17, 8:7, 8:15, 11:15, 11:16, 11:18, 16:4, 16:6, 16:8, 16:14, 16:22, 18:21, 19:5, 20:2, 21:15, 24:1, 24:3, 24:19, 24:20, 27:12
**Court's** [2] - 16:1, 19:1
**Courthouse** [1] - 2:8
**courtroom** [11] - 3:25, 9:1, 9:18, 10:15, 10:23, 19:10, 19:21, 21:2, 21:17, 21:18, 23:5
**create** [1] - 15:19
**Crime** [1] - 1:15
**criminal** [1] - 3:2
**Criminal** [1] - 1:3
**current** [1] - 11:14

## D

**date** [6] - 21:20, 22:16, 23:1, 24:7, 25:12, 26:20
**daughter** [2] - 23:10, 23:11
**days** [3] - 21:22, 24:15, 24:21
**DC** [6] - 1:5, 1:17, 1:19, 1:23, 2:4, 2:9
**deadlocked** [2] - 12:22, 15:1
**deal** [1] - 8:5
**decent** [1] - 9:20
**decided** [3] - 4:2, 10:24, 19:25
**decision** [2] - 7:9, 20:3
**declare** [2] - 18:21, 19:25
**declared** [2] - 15:18, 19:10
**Defendant** [3] - 1:20, 2:2, 3:3
**defendant** [4] - 3:4, 10:1, 10:4, 10:11
**Defendants** [1] - 1:8
**defendants** [2] - 10:5, 10:8
**defense** [1] - 24:5
**definitely** [1] - 23:11
**deliberate** [9] - 6:18, 11:16, 12:21, 14:8, 14:19, 15:14, 17:1, 17:6, 18:1
**deliberating** [12] - 5:10, 5:17, 6:1, 6:5, 6:16, 6:23, 7:5, 12:4, 12:6, 12:17, 17:22, 18:2
**deliberation** [2] - 17:11, 17:14
**deliberations** [13] - 5:15, 7:4, 10:9, 11:10, 11:22, 12:8, 13:9, 13:19, 13:24, 14:17, 16:5, 16:11, 16:12
**delve** [1] - 18:19
**DEPUTY** [8] - 3:2, 9:10, 9:13, 9:17, 16:20, 19:20, 23:16, 27:14
**describing** [1] - 10:24
**determine** [1] - 5:14
**die** [1] - 22:17
**different** [6] - 4:18, 5:7, 10:7, 10:8, 17:7
**direct** [1] - 20:15
**discuss** [4] - 11:11, 11:12, 17:2, 24:4
**discussed** [2] - 11:4, 11:8
**discussing** [1] - 12:17
**discussion** [2] - 5:23, 19:24
**discussions** [2] - 9:23, 11:4
**dismiss** [2] - 6:9, 11:13
**disposition** [2] - 24:4, 26:14
**DISTRICT** [4] - 1:1, 1:1, 1:11, 1:14
**divided** [1] - 16:10
**docket** [1] - 22:21
**docketed** [1] - 15:2
**done** [4] - 8:6, 8:12, 23:23, 25:24
**doubt** [1] - 7:1
**down** [1] - 20:6
**during** [2] - 10:9, 22:1

## E

**EDVA** [1] - 22:13
**efforts** [2] - 20:3, 21:12
**either** [1] - 8:3
**end** [3] - 14:1, 22:4, 25:24
**ended** [1] - 13:19
**engaged** [1] - 13:24
**engaging** [2] - 12:7, 13:9
**enters** [2] - 9:18, 19:21
**entertain** [2] - 4:8, 11:13
**estimating** [1] - 25:23
**event** [4] - 6:11, 8:17, 21:8, 24:20
**evidence** [4] - 11:11, 11:12, 12:17, 17:2
**evolved** [1] - 6:10
**exactly** [3] - 5:14, 14:16, 16:4
**excuse** [5] - 9:12, 11:19, 11:21, 18:9, 19:11
**expected** [1] - 25:2
**expecting** [1] - 26:9
**expects** [1] - 23:23
**experience** [1] - 26:10
**expressed** [1] - 15:5
**extent** [1] - 20:20
**extraordinarily** [1] - 15:19

## F

**fact** [2] - 10:1, 11:20
**failure** [1] - 14:19
**fair** [1] - 13:20
**fairly** [2] - 20:5, 21:13
**Feitel** [6] - 2:2, 3:12, 3:16, 16:3, 22:9, 26:22
**FEITEL** [27] - 2:2, 3:12, 4:16, 4:25, 5:21, 6:8, 6:19, 7:16, 7:18, 8:17, 12:2, 12:19, 13:7, 13:16, 13:20, 14:3, 14:16, 14:22, 17:19, 18:12, 18:15, 22:12, 22:16, 22:21, 23:4, 23:9, 26:8
**figure** [5] - 6:14, 18:20, 20:13, 21:10, 26:13
**fill** [1] - 10:13
**firm** [3] - 15:5, 17:5, 17:25
**First** [1] - 20:25
**first** [8] - 10:19, 12:13, 14:20, 16:8, 16:11, 16:18, 22:7, 22:12
**flag** [1] - 24:19
**flight** [1] - 25:13
**focus** [1] - 13:7
**follow** [1] - 10:20
**followed** [1] - 15:15
**following** [4] - 1:25, 10:17, 23:25, 25:24
**follows** [1] - 16:22
**FOR** [2] - 1:1, 1:14
**foreperson** [11] - 7:3, 10:12, 11:7, 12:7, 14:4, 16:5, 16:19, 16:21, 18:11, 18:18, 19:24
**FOREPERSON** [7] - 17:3, 17:10, 17:13, 17:17, 17:24, 18:6, 18:10
**form** [6] - 3:23, 3:25, 4:1, 7:14, 10:13, 10:15
**forth** [1] - 12:4
**forward** [1] - 12:14
**four** [1] - 22:2
**free** [2] - 23:18, 24:18
**Friday** [7] - 11:8, 12:11, 13:15, 13:16, 16:13, 16:24, 17:9
**front** [2] - 23:5, 25:22
**fulfilling** [1] - 5:25
**full** [1] - 12:3

## G

**generic** [1] - 14:13
**gentlemen** [3] - 9:20, 10:22, 19:23
**gigantic** [1] - 5:2
**given** [5] - 4:19, 16:6, 16:13, 19:6, 24:5
**glad** [1] - 18:15
**Government** [8] - 3:6, 3:17, 4:10, 4:13, 15:8, 23:19, 26:13, 27:8
**Government's** [1] - 24:23
**great** [1] - 3:14
**grounds** [1] - 7:11
**guess** [5] - 5:2, 8:11, 17:20, 24:4, 27:1
**Guillaume** [4] - 1:20, 3:11, 4:17, 16:4
**GUILLAUME** [17] - 1:21, 3:10, 7:22, 7:24, 9:2, 15:21, 18:23, 21:24, 22:10, 23:17, 24:10, 24:24, 25:13, 25:17, 26:7, 27:5, 27:11
**guilty** [8] - 8:17, 9:3, 10:1, 10:2, 10:6, 10:10

## H

**hallway** [1] - 21:4
**hand** [1] - 4:1
**hands** [2] - 19:12, 20:7
**happy** [1] - 24:13
**hard** [1] - 13:12
**Harvard** [1] - 5:23
**hate** [1] - 19:3
**hear** [1] - 20:15
**heard** [2] - 15:25, 17:19
**HELD** [1] - 1:10
**help** [2] - 20:13, 20:21
**helpful** [1] - 20:15
**helping** [1] - 20:7
**helps** [1] - 21:9
**holiday** [1] - 24:15
**Honor** [57] - 3:8, 3:10, 3:12, 3:16, 4:9, 4:16, 5:19, 6:9, 7:2, 7:20, 7:22, 9:2, 12:3, 13:2, 13:21, 13:22, 14:12, 15:13, 15:21, 15:25, 16:1, 16:12, 16:16, 18:10, 18:12, 18:16, 18:23, 19:3, 19:7, 21:24, 22:8, 22:11, 23:6, 23:17, 23:20, 23:24, 24:1, 24:8, 24:10, 24:11, 24:25, 25:1, 25:4, 25:10, 25:13, 25:17, 25:21, 26:7, 26:11, 26:15, 26:17, 26:23, 27:3,

27:5, 27:8, 27:11
**Honor's** [3] - 4:19, 6:1, 15:15
**HONORABLE** [1] - 1:10
**hope** [1] - 9:20
**hours** [1] - 16:12
**HUMBERTO** [1] - 1:6
**Humberto** [1] - 3:3

## I

**idea** [1] - 10:25
**identifying** [1] - 14:3
**ignore** [1] - 13:14
**III** [2] - 1:20, 1:21
**impartially** [2] - 20:5, 21:13
**importantly** [2] - 5:16, 6:15
**imposition** [1] - 21:14
**improper** [1] - 5:11
**IN** [1] - 1:1
**inclined** [1] - 11:13
**inconsistent** [1] - 6:19
**indicated** [2] - 3:19, 16:19
**indicating** [1] - 19:4
**indictment** [3] - 10:2, 10:4, 10:7
**indulgence** [1] - 19:1
**inertia** [1] - 6:23
**influence** [1] - 10:3
**information** [1] - 7:19
**initial** [1] - 6:23
**inquire** [5] - 3:17, 7:3, 7:11, 14:9, 16:5
**instruct** [2] - 4:6, 10:17
**instructed** [2] - 8:3, 10:4
**instruction** [3] - 8:13, 9:24, 19:6
**instructions** [5] - 3:23, 4:20, 9:25, 10:18, 15:16
**intention** [2] - 6:1, 6:3
**interim** [1] - 24:3
**interpreter** [2] - 2:5, 3:5
**invariably** [1] - 4:21
**issue** [1] - 18:3

## J

**Jackson** [1] - 22:3
**join** [2] - 15:21, 18:23
**JUDGE** [2] - 1:10, 1:11
**Judge** [2] - 22:3, 25:22
**July** [2] - 22:3, 22:13
**June** [1] - 21:23
**juror** [21] - 5:15, 5:16, 6:9, 9:15, 11:7, 11:11, 11:12, 11:14, 11:19, 11:21, 12:12, 12:16, 13:1, 13:8, 14:5, 14:8, 14:10, 16:18, 16:20, 17:5, 18:19
**jurors** [16] - 5:5, 5:9, 5:12, 5:24, 7:5, 11:22, 13:9, 15:4, 15:11, 17:1, 17:7, 18:5, 18:17, 19:12, 20:16, 20:25
**jurors'** [1] - 20:18
**JURY** [1] - 1:9
**Jury** [4] - 9:18, 10:23, 19:21, 21:17
**jury** [35] - 4:6, 4:15, 4:19, 5:7, 6:4, 6:13, 8:8, 8:9, 8:12, 8:20, 9:5, 9:12, 9:17, 11:4, 11:16, 11:17, 12:3, 13:20, 13:23, 14:19, 15:12, 16:3, 17:13, 19:10, 19:11, 19:12, 19:16, 19:18, 19:20, 20:11, 20:21, 21:6, 21:7, 23:24
**justice** [2] - 20:5, 21:14

## K

**keep** [4] - 12:4, 12:22, 18:2
**kind** [1] - 20:20
**knows** [2] - 12:3, 24:2

## L

**Labor** [3] - 23:7, 23:8, 23:13
**ladies** [3] - 9:19, 10:21, 19:23
**LAMBERTH** [1] - 1:10
**last** [7] - 5:5, 9:15, 12:8, 14:7, 15:12, 15:14, 19:24
**LAW** [2] - 1:21, 2:2
**law** [2] - 6:8, 6:10
**lawyers** [1] - 5:6
**least** [1] - 7:3
**leave** [7] - 13:10, 19:13, 19:19, 20:8, 20:11, 21:4, 25:12
**leaves** [2] - 10:23, 21:17
**leaving** [1] - 24:17
**lectern** [1] - 18:12
**left** [2] - 3:11, 18:11
**less** [1] - 26:10
**Levy** [5] - 1:18, 3:9, 23:22, 24:24, 25:1
**LEVY** [3] - 25:21, 26:1, 26:4
**Levy's** [2] - 24:18, 25:20
**light** [1] - 16:23
**likely** [2] - 4:23, 15:19
**limited** [1] - 16:14
**LLC** [1] - 1:21
**look** [3] - 8:13, 8:19, 26:16
**LUNA** [1] - 1:6
**Luna** [7] - 3:4, 3:11, 7:25, 15:22, 18:24, 21:25, 24:11

## M

**March** [1] - 22:19
**Mark** [2] - 1:18, 3:9
**marshal** [1] - 10:14
**matter** [1] - 12:9
**mean** [4] - 5:4, 6:11, 6:24, 8:1
**means** [2] - 5:4, 18:20
**meet** [1] - 10:16
**members** [1] - 5:7
**mental** [1] - 14:5
**might** [3] - 8:13, 22:19, 26:14
**mind** [1] - 14:15
**minds** [3] - 12:4, 12:21, 14:10
**missed** [1] - 24:22
**mistrial** [10] - 4:22, 7:1, 12:23, 14:11, 15:17, 15:22, 18:13, 18:21, 19:11, 19:25
**Mohanty** [3] - 1:13, 3:9, 15:9
**MOHANTY** [19] - 3:8, 3:16, 3:20, 4:9, 4:12, 15:25, 19:1, 19:3, 23:20, 25:1, 25:6, 25:9, 26:11, 26:15, 26:17, 26:20, 26:22, 27:3, 27:8
**Moises** [1] - 3:3
**MOISES** [1] - 1:6
**money** [1] - 24:12
**Monroe** [1] - 2:7
**month** [2] - 22:2, 23:18
**month-long** [1] - 22:2
**moreover** [1] - 5:9
**morning** [11] - 3:8, 3:10, 3:12, 4:16, 9:10, 9:19, 14:7, 16:2, 16:24, 17:2, 17:4
**most** [2] - 6:22, 22:24
**motion** [1] - 11:13
**motions** [2] - 4:8, 9:8
**move** [4] - 12:14, 12:23, 14:11, 23:12
**movement** [1] - 15:11
**MR** [64] - 3:8, 3:10, 3:12, 3:16, 3:20, 4:9, 4:12, 4:16, 4:25, 5:21, 6:8, 6:19, 7:16, 7:18, 7:22, 7:24, 8:17, 9:2, 12:2, 12:19, 13:7, 13:16, 13:20, 14:3, 14:16, 14:22, 15:21, 15:25, 17:19, 18:12, 18:15, 18:23, 19:1, 19:3, 21:24, 22:10, 22:12, 22:16, 22:21, 23:4, 23:9, 23:17, 23:20, 24:10, 24:24, 25:1, 25:6, 25:9, 25:13, 25:17, 25:21, 26:1, 26:4, 26:7, 26:8, 26:11, 26:15, 26:17, 26:20, 26:22, 27:3, 27:5, 27:8, 27:11

## N

**Narcotics** [1] - 1:15
**need** [4] - 11:6, 18:19, 26:13, 27:6
**needs** [1] - 4:21
**neutral** [2] - 5:22, 13:3
**never** [2] - 5:8, 23:5
**new** [2] - 11:3, 21:20
**news** [1] - 19:7
**next** [2] - 10:20, 21:10
**Nihar** [2] - 1:13, 3:8
**noncoercive** [1] - 7:3
**note** [27] - 5:3, 5:9, 6:17, 7:6, 7:8, 8:1, 9:21, 9:22, 11:3, 11:8, 12:8, 13:14, 13:16, 13:17, 14:7, 15:1, 15:2, 15:3, 15:12, 15:14, 16:7, 16:9, 16:13, 16:24, 19:24
**notes** [3] - 6:19, 6:24, 15:1
**nothing** [1] - 15:14
**number** [1] - 8:24
**Number** [1] - 15:3
**numbers** [1] - 24:6
**NW** [5] - 1:16, 1:19, 1:22, 2:3, 2:8

## O

**oath** [2] - 5:25, 6:16
**object** [8] - 11:23, 11:24, 11:25, 12:2, 12:3, 12:25, 14:11
**objection** [2] - 4:9, 4:12
**obvious** [1] - 13:4
**obviously** [6] - 4:14, 9:7, 11:24, 11:25, 19:19, 21:11
**occurred** [1] - 5:8
**October** [5] - 22:6, 24:13, 24:14, 24:17, 25:14
**OF** [6] - 1:1, 1:3, 1:9, 1:14, 1:21, 2:2
**Office** [1] - 1:18
**OFFICE** [2] - 1:14, 2:2
**OFFICES** [1] - 1:21
**Official** [1] - 2:7
**often** [1] - 20:4
**once** [2] - 9:6, 9:23
**one** [29] - 4:19, 5:2, 5:4, 5:9, 5:12, 5:24, 6:1, 6:3, 7:9, 7:10, 8:2, 9:22, 10:1, 10:2, 10:5, 10:6, 10:12, 10:19, 12:23, 13:7, 14:3, 15:7, 17:3, 17:5, 18:4, 18:5, 18:18, 24:14, 25:23
**ongoing** [1] - 7:4
**open** [2] - 10:15, 13:19
**open-ended** [1] - 13:19
**opportunity** [4] - 11:23, 19:15, 20:10, 21:19
**opposed** [2] - 6:4, 14:3
**order** [2] - 21:6, 21:7
**ordering** [1] - 6:4
**original** [2] - 9:25, 15:1
**originally** [1] - 10:18
**otherwise** [1] - 10:5
**ought** [1] - 15:18
**outside** [1] - 20:21
**overcome** [1] - 6:22

## P

**p.m** [2] - 15:2, 27:1

**page** [4] - 1:25, 3:23, 9:24, 10:18
**panel** [6] - 9:17, 9:18, 10:23, 19:20, 19:21, 21:17
**paper** [1] - 5:6
**part** [1] - 5:3
**partial** [8] - 3:18, 3:22, 4:7, 4:15, 4:20, 4:24, 5:13, 16:7
**particular** [1] - 12:12
**parties** [2] - 11:18, 24:6
**parts** [1] - 5:2
**party** [1] - 8:16
**Pause** [3] - 19:2, 25:18, 26:25
**Pennsylvania** [1] - 2:3
**people** [1] - 12:24
**percent** [1] - 22:22
**perfectly** [1] - 15:12
**permit** [1] - 11:16
**person** [5] - 6:18, 11:9, 14:3, 14:21, 21:2
**persons** [1] - 11:17
**philosophical** [1] - 5:22
**phone** [1] - 23:4
**phrase** [1] - 13:5
**pick** [2] - 23:1, 23:24
**place** [1] - 16:18
**Plaintiff** [2] - 1:4, 1:13
**plans** [3] - 22:3, 22:6, 24:20
**podium** [1] - 3:6
**point** [8] - 8:11, 8:12, 14:18, 16:2, 17:21, 18:6, 18:7
**poll** [14] - 4:4, 4:5, 4:7, 8:11, 8:14, 8:15, 8:16, 8:18, 8:21, 8:22, 9:3
**polling** [4] - 4:6, 4:15, 8:13, 10:24
**position** [3] - 7:2, 14:17, 15:17
**possibility** [1] - 5:10
**possible** [3] - 14:13, 17:2, 23:9
**potential** [1] - 24:4
**potentially** [1] - 22:1
**precipitated** [1] - 7:1
**predicament** [1] - 24:19
**prefer** [1] - 6:13
**preference** [2] - 6:11, 6:14
**prepare** [2] - 3:22, 3:24
**prepared** [1] - 7:14
**present** [1] - 7:14
**press** [5] - 21:1, 21:2, 21:7, 21:8
**previously** [2] - 3:5, 11:5
**problem** [5] - 5:1, 6:17, 12:18, 17:24, 25:16
**problematic** [6] - 5:2, 5:11, 12:6, 13:8, 14:6, 15:19
**proceed** [1] - 5:13
**Proceedings** [1] - 27:15
**proposal** [1] - 4:13
**purchased** [1] - 24:12

## Q

**questioning** [3] - 7:13, 12:25, 14:11
**questions** [6] - 11:20, 11:25, 13:3, 15:18, 16:14, 16:19
**quick** [1] - 22:15

## R

**Ramirez** [2] - 3:4, 3:13
**RAMIREZ** [1] - 1:7
**Ranjan** [1] - 1:13
**rather** [1] - 21:1
**reach** [10] - 12:15, 12:20, 15:3, 15:17, 17:22, 18:18, 19:5, 20:3, 21:12, 22:22
**reached** [9] - 6:18, 7:9, 7:12, 8:2, 8:7, 9:22, 10:11, 11:5
**reaching** [1] - 12:13
**read** [2] - 10:15, 15:7
**reading** [1] - 11:14
**realized** [1] - 17:14
**really** [6] - 7:6, 12:5, 13:12, 13:25, 17:6, 18:19
**reason** [4] - 12:5, 14:9, 14:18, 17:21
**reasons** [2] - 13:4, 15:23
**Rebecca** [1] - 2:7
**Recess** [3] - 9:14, 11:2, 21:21
**recess** [4] - 10:21, 11:1, 21:16, 27:12
**reconvene** [1] - 21:18
**record** [5] - 3:5, 3:7, 7:24, 21:22, 22:11
**Red** [2] - 8:13, 8:19
**refusing** [1] - 12:16
**regard** [1] - 5:18
**regret** [1] - 19:25
**reject** [1] - 8:7
**remaining** [1] - 4:22
**remains** [1] - 15:17
**remind** [1] - 16:8
**repeat** [1] - 9:24
**Reporter** [2] - 2:7, 2:7
**request** [9] - 4:4, 4:5, 8:14, 8:15, 8:16, 8:18, 9:3, 15:22, 18:24
**requires** [1] - 14:4
**reread** [1] - 3:23
**respect** [2] - 10:3, 10:10
**respectful** [1] - 20:19
**result** [1] - 9:21
**resume** [1] - 8:9
**retired** [1] - 11:16
**retrial** [1] - 21:23
**retried** [1] - 20:17
**return** [6] - 3:25, 7:19, 10:7, 10:9, 10:13, 11:17
**returning** [2] - 13:23, 22:4
**revealed** [1] - 4:20
**revealing** [1] - 11:9
**revelations** [1] - 3:14
**Reyes** [1] - 25:22
**Rhee** [2] - 22:17, 22:23
**rise** [2] - 9:13, 27:14
**RIVERA** [1] - 1:6
**Rivera** [7] - 3:4, 3:11, 7:25, 15:22, 18:24, 21:25, 24:11
**RIVERA-LUNA** [1] - 1:6
**Rivera-Luna** [7] - 3:4, 3:11, 7:25, 15:22, 18:24, 21:25, 24:11
**Robert** [2] - 2:2, 3:12
**ROBERT** [1] - 2:2
**RODAS** [1] - 1:7
**Rodas** [2] - 3:4, 3:13
**RODAS-RAMIREZ** [1] - 1:7
**Rodas-Ramirez** [2] - 3:4, 3:13
**Roman** [1] - 2:5
**Room** [2] - 1:16, 2:8
**room** [6] - 17:14, 19:12, 19:16, 19:18, 20:11, 20:21
**ROYCE** [1] - 1:10
**RPR** [1] - 2:7
**Rule** [1] - 11:14
**running** [2] - 17:25, 18:3

## S

**scheduled** [4] - 22:5, 22:12, 23:20, 25:10
**seated** [3] - 3:11, 9:19, 19:22
**second** [1] - 22:18
**Section** [1] - 1:15
**see** [7] - 4:24, 5:6, 8:4, 8:14, 9:9, 11:1, 19:7
**seem** [2] - 12:19, 18:17
**sense** [2] - 17:7, 24:7
**September** [26] - 22:1, 22:5, 22:7, 22:23, 23:2, 23:8, 23:10, 23:14, 23:18, 23:21, 23:23, 24:16, 24:18, 24:22, 25:2, 25:3, 25:6, 25:7, 25:9, 25:10, 25:15, 25:22, 26:3, 26:6
**service** [1] - 19:13
**set** [3] - 21:20, 22:18, 23:9
**shake** [2] - 19:12, 20:7
**sheet** [1] - 5:6
**short** [1] - 21:16
**sic]** [1] - 22:22
**sides** [1] - 19:17
**single** [1] - 14:23
**singling** [1] - 14:4
**sit** [3] - 7:18, 18:13, 18:14
**sitting** [1] - 21:2
**six** [1] - 22:2
**slightly** [1] - 4:18
**so..** [1] - 23:13
**someone** [8] - 6:15, 12:5, 12:7, 12:9, 13:13, 14:15, 15:14, 17:25
**sometimes** [1] - 20:4
**somewhat** [1] - 16:23
**sorry** [4] - 4:11, 8:8, 25:9, 26:17
**sort** [2] - 6:21, 13:8
**Spanish** [1] - 2:5
**speaker** [1] - 14:5
**specifically** [1] - 14:9
**speedy** [3] - 22:11, 22:25, 24:2
**spent** [2] - 4:17, 24:12
**split** [1] - 4:20
**stalled** [1] - 9:23
**stance** [1] - 17:5
**start** [2] - 24:13, 24:21
**started** [2] - 24:15, 25:11
**starting** [5] - 3:6, 22:3, 23:11, 23:22, 24:13
**starts** [1] - 25:2
**state** [4] - 3:7, 12:1, 14:5, 16:5
**STATES** [3] - 1:1, 1:3, 1:11
**States** [4] - 1:18, 2:8, 3:3, 3:9
**status** [2] - 24:3, 26:12
**step** [2] - 10:20, 21:10
**still** [3] - 17:22, 20:12, 20:22
**stipulation** [1] - 11:18
**Street** [2] - 1:16, 1:19
**structure** [1] - 13:12
**substantial** [1] - 24:12
**suggest** [1] - 13:3
**suggested** [1] - 16:15
**suggestion** [1] - 16:1
**Suite** [2] - 1:22, 2:3
**superseded** [1] - 13:17
**suppose** [1] - 19:6
**supposed** [1] - 24:17
**suspect** [1] - 14:18
**sworn** [1] - 3:5
**system** [1] - 9:9

## T

**teresa** [1] - 2:5
**terms** [2] - 5:25, 26:12
**tested** [1] - 9:10
**thanked** [1] - 19:16
**THE** [89] - 1:1, 1:1, 1:10, 1:14, 3:2, 3:14, 3:19, 3:21, 4:11, 4:14, 4:23, 5:20, 6:6, 6:17, 7:6, 7:17, 7:21, 7:23, 8:1, 8:19, 9:5, 9:10, 9:11, 9:13, 9:15, 9:17, 9:19, 10:24, 11:3, 12:11, 13:5, 13:14, 13:18, 14:2, 14:14, 14:20, 16:17, 16:20, 16:23, 17:3, 17:8, 17:10, 17:11, 17:13, 17:16, 17:17, 17:18, 17:20, 17:24, 18:4, 18:6, 18:7, 18:10, 18:14, 19:9, 19:20, 19:22, 21:18, 21:22, 22:9, 22:15, 22:20, 23:2, 23:8, 23:14, 23:16,

23:19, 24:9, 24:22, 25:5, 25:8, 25:11, 25:15, 25:19, 25:25, 26:2, 26:5, 26:9, 26:12, 26:16, 26:19, 26:21, 26:24, 27:1, 27:4, 27:6, 27:10, 27:12, 27:14
**Thereupon** [1] - 16:21
**they've** [3] - 6:22, 7:11, 12:16
**Thomas** [1] - 19:6
**Thursday** [2] - 25:22, 26:1
**today** [4] - 13:17, 13:23, 17:12, 27:7
**together** [1] - 16:2
**Tokiro** [1] - 3:4
**TOKIRO** [1] - 1:7
**toll** [1] - 24:2
**totally** [2] - 6:19, 20:23
**town** [1] - 26:18
**Trafficking** [1] - 1:15
**TRANSCRIPT** [1] - 1:9
**travel** [3] - 22:6, 24:13, 24:20
**trial** [20] - 5:5, 20:1, 20:17, 22:2, 22:11, 22:12, 22:16, 22:18, 22:21, 22:25, 23:21, 23:22, 24:2, 24:7, 24:14, 24:16, 24:24, 25:2, 25:10, 25:21
**TRIAL** [1] - 1:9
**tried** [1] - 20:15
**try** [6] - 5:13, 6:14, 20:3, 20:14, 21:12, 22:17
**turns** [1] - 6:23
**two** [9] - 5:1, 16:10, 16:12, 17:7, 17:25, 18:19, 24:21, 26:9, 26:15

## U

**U.S** [1] - 1:14
**unable** [2] - 15:5, 16:10
**understood** [1] - 19:4
**unfortunately** [1] - 22:24
**United** [4] - 1:18, 2:8, 3:3, 3:9
**UNITED** [3] - 1:1, 1:3, 1:11
**University** [1] - 5:23
**unless** [1] - 10:4
**unlikely** [1] - 22:13
**unsure** [1] - 12:14
**unusual** [1] - 16:23
**up** [5] - 18:15, 20:23, 21:4, 21:6, 21:8
**useful** [1] - 20:18

## V

**verdict** [48] - 3:18, 3:22, 3:25, 4:1, 4:7, 4:15, 4:21, 4:24, 5:3, 5:5, 5:7, 5:13, 6:15, 6:18, 7:9, 7:11, 7:14, 8:2, 8:4, 8:7, 8:10, 8:17, 8:23, 9:3, 9:7, 9:22, 10:3, 10:10, 10:11, 10:13, 10:15, 11:6, 11:17, 12:20, 15:4, 15:17, 16:7, 17:8, 18:18, 19:5, 21:5, 21:6, 21:13, 22:22
**verdicts** [1] - 10:7
**versus** [1] - 3:3
**view** [2] - 6:20, 6:21
**views** [2] - 20:18, 20:20
**violation** [1] - 6:16
**Violent** [1] - 1:15
**vote** [1] - 4:20
**votes** [1] - 15:5
**vs** [1] - 1:5

## W

**wait** [1] - 4:23
**waive** [2] - 22:10, 22:25
**walk** [1] - 20:24
**Washington** [6] - 1:5, 1:17, 1:19, 1:23, 2:4, 2:9
**weeds** [1] - 18:20
**week** [7] - 22:13, 22:19, 24:16, 25:6, 25:23, 25:24, 26:22
**weekend** [3] - 9:20, 23:7, 23:8
**weeks** [4] - 22:2, 23:25, 26:9, 26:15
**who'll** [1] - 10:14
**willing** [5] - 11:11, 11:12, 17:1, 20:10, 21:9
**wish** [2] - 19:17, 26:21
**wonder** [1] - 23:9
**word** [1] - 5:7
**works** [2] - 8:22, 8:25

## Y

**youngest** [2] - 23:10, 23:11